No. 239, Misc.   HIROTA *v.* MACARTHUR ET AL.;
No. 240, Misc.   DOHIHARA *v.* MACARTHUR ET AL.; and
No. 248, Misc.   KIDO ET AL. *v.* MACARTHUR ET AL.

THE CHIEF JUSTICE, MR. JUSTICE REED, MR. JUSTICE FRANKFURTER, and MR. JUSTICE BURTON are of the opinion that there is want of jurisdiction. U. S. Constitution, Article III, § 2, Clause 2. MR. JUSTICE JACKSON has filed a memorandum stating his views. *David F. Smith* for petitioners in Nos. 239 and 240. *George Yamaoka* was also of counsel in No. 239. *John W. Crandall* and *Ben Bruce Blakeney* for petitioners in No. 248.

MR. JUSTICE JACKSON:

Four members of this Court feel that the Japanese convicted of war crimes should have some form of relief, at least tentative, from this Court. The votes of these are not enough to grant it but, if I refrain from voting, they constitute one-half of the sitting Court. As I understand it, these Justices do not commit themselves as to whether there is any constitutional power in this Court to entertain these proceedings but only feel that they would like to hear argument to enlighten them in reaching a determination of that issue. They feel it so strongly that they not only favored grant of relief in conference, but, having failed, announce their dissent to the public— an interested section of which consists of our late enemies and allies in the Orient. This perhaps is all that these Justices could do consistently with the course that

they have already taken in several German cases.[1] This is their right, and I point it out not to question the right but as one of the facts which confronts me in deciding my own course.

On the other hand, four other Justices are convinced, from their study of the question, that there is no constitutional jurisdiction whatever in this Court over the subject matter. To interfere and assume to review it would in that view constitute an unwarranted interference with delicate affairs that are in no way committed to the jurisdiction of this Court. These four Justices having satisfied themselves that this Court is without lawful power, have consistently refused to take action which would usurp it, even tentatively, in the German cases. Of course, they could not consistently, with equal justice under law, apply a different jurisdictional rule to these cases than they have to those of the Germans.

By reason of nonparticipation in the German cases, for reasons which are obvious, I remain uncommitted on the jurisdictional issues. My nonparticipation has prevented their resolution heretofore and I must decide whether another nonparticipation will prevent it now. The issue transcends the particular litigation.

This public division of the Court, equal if I do not participate, puts the United States before the world, and

---

[1] See, e. g., Milch v. United States, 332 U. S. 789; Brandt v. United States, 333 U. S. 836; Brack v. United States, 333 U. S. 836; Gebhardt v. United States, 333 U. S. 836; Hoven v. United States, 333 U. S. 836; Mrugowsky v. United States, 333 U. S. 836; Sievers v. United States, 333 U. S. 836; Fischer v. United States, 333 U. S. 836; Genzken v. United States, 333 U. S. 836; Handloser v. United States, 333 U. S. 836; Rose v. United States, 333 U. S. 836; Schroeder v. United States, 333 U. S. 836; Becker-Freyseng v. United States, 333 U. S. 836; Everett v. Truman, 334 U. S. 824; In re Ehlen, 334 U. S. 836; In re Girke, 334 U. S. 836; In re Gronwald, 334 U. S. 857; In re Wentzel, 335 U. S. 805; In re Hans, 335 U. S. 841; In re Heim, 335 U. S. 856; In re Eckstein, 335 U. S. 851.

particularly before Oriental peoples, in this awkward position: Having major responsibility for the capture of these Japanese prisoners, it also has considerable responsibility for their fate. If their plea ends in stalemate in this Court, the authorities have no course but to execute sentences which half of this Court tells the world are on so doubtful a legal foundation that they favor some kind of provisional relief and fuller review. The fact that such a number of men so placed in the United States are of that opinion would for all time be capitalized in the Orient, if not elsewhere, to impeach the good faith and to discredit the justice of this country, and to comfort its critics and enemies.

The other possible course is to assert tentatively a jurisdiction in this Court to stay and order hearings in these proceedings. This is likewise bound to embarrass the United States. On American initiative, under direction of the President as Commander-in-Chief, this country invited our Pacific allies, on foreign soil, to cooperate in conducting a grand inquest into the alleged crimes, including the war guilt, of these defendants. Whatever its real legal nature, it bears the outward appearance of an international enterprise, undertaken on our part under the war powers and control of foreign affairs vested in the Executive. For this Court now to call up these cases for judicial review under exclusively American law can only be regarded as a warning to our associates in the trials that no commitment of the President or of the military authorities, even in such matters as these, has finality or validity under our form of government until it has the approval of this Court. And since the Court's approval or disapproval cannot be known until after the event—usually long after—it would substantially handicap our country in asking other nations to rely upon the word or act of the President in affairs which only he is competent to conduct.

In this equal division each side's position is taken after long and frequent consideration and repeated public announcement in the German cases. The one group of Justices can hardly fail to proffer to the Japanese an opportunity to argue reviewability which they have consistently announced should be allowed to the Germans. Neither can the other side extend to the Japanese opportunities which they have consistently denied to the Germans. The fact that neither side in good grace can retreat puts to me disagreeable alternatives as to whether I should break the deadlock or permit it to continue.

I do not regard myself as under a legal disqualification in these Japanese cases under the usages as to disqualification which prevail in this Court. While I negotiated the international Charter under which the Nazi war criminals were tried and also represented the United States in that Four-Power trial, the Japanese were not tried under that Charter but under a later and, in respects relevant to the present controversy, a somewhat different charter, promulgated by different authority. Of course, I participated in formulating basic rules on the subject of war crimes. But it is not the custom of this Court that a Justice disqualifies from passing on a particular case because he actively participated as a Senator or Representative in making the law under which it was tried. Nor has it been considered necessary to disqualify himself because he had handled cases which involved the same law or crimes as those involved in the case before him. I have had no participation either in the basic decision to hold war crimes trials in the Orient or as to the manner in which they should be conducted. Nevertheless, I have been so identified with the subject of war crimes that, if it involved my personal preferences alone, I should not sit in this case.

But the issues here are truly great ones. They only involve decision of war crimes issues secondarily, for

primarily the decision will establish or deny that this Court has power to review exercise of military power abroad and the President's conduct of external affairs of our Government. The answer will influence our Nation's reputation for continuity of policy for a long time to come. For these reasons I decided at Saturday's conference to break the tie in the Japanese cases. The horns between which I must choose in the dilemma are such, as I have pointed out, that it is a choice between evils. The reasons which guide me to a choice are these:

If I add my vote to those who favor denying these applications for want of jurisdiction, it is irrevocable. The Japanese will be executed and their partisans will forever point to the dissents of four members of the Court to support their accusation that the United States gave them less than justice. This stain, whether deserved or not, would be impressed upon the record of the United States in Oriental memory. If, however, I vote with those who would grant temporary relief, it may be that fuller argument and hearing will convert one or more of the Justices on one side or the other from the views that have equally divided them in the German cases. In those cases I did not feel at liberty to cast the deciding vote and there was no course to avoid leaving the question unresolved. But here I feel that a tentative assertion of jurisdiction, which four members of the Court believe does not exist, will not be irreparable if they ultimately are right. To let the sentences be executed against the dissent of four members will be irreparably injurious even if they are wrong, and if their minds are open, as it is understood, to further persuasion, I would not want to be responsible for eliminating even a faint chance of avoiding dissents in this matter. Our allies are more likely to understand and to forgive any assertion of excess jurisdiction against this background than our enemies would be to understand

or condone any excess of scruple about jurisdiction to grant them a hearing.

It is fair to counsel to say that I intend to sit and hear argument at the hearing which I am voting to grant. I shall hope not to participate in the final decision but as to that, I reserve full freedom of decision.

For the present, it is enough that I vote with JUSTICES BLACK, DOUGLAS, MURPHY and RUTLEDGE, who have consistently noted their dissent in war crimes cases, for whatever temporary restraints or writs they see fit to grant for the purpose of bringing on any hearings or arguments they want to hear as a basis for reaching their final decision on the merits. Needless to say, in doing this I express neither approval nor disapproval of the course they have taken and intimate no views on the constitutional issues involved. I have thought, however, that a candid disclosure of the considerations which influence me is due, not only to the litigants in these cases and to those in the previous German cases, but in justice to the Court and to myself.

Time is important in these cases. I notified the full Court of my position on December 4, as soon as I knew the positions others took on this case, in order that no delay may be chargeable to my indecisions. I hope these cases will now be set for the earliest possible hearing. I also indulge the hope that argument will produce a majority decision of the Court without further intervention from one who has been so identified with controversial phases of war crimes law that he cannot expect others to consider him as detached and dispassionate on the subject as he thinks himself to be.